Good morning, your honors. If it pleases the court, also, I'm Christine Ory. I'm representing the Iverson in this matter. Quite honestly, I am surprised to be going first, having had the commission find in favor of the petitioner, my client, on the issue of penalties, to have the circuit court judge reverse it, based upon the finding, as the judge indicated, that it was a question of law and not fact. However, as you well know, the question of whether or not the commission had the ability to do so was a question of law, not fact. The ability to award penalties is a question of fact. I divide my argument into three parts. The law, as I've stated. The second is fact. And the third is reality. Number one, the fact is that the employer did have written notice as of January 9, 2007, that the petitioner would be meeting this nerve stimulator within three months' time at the beginning of 2007. The fact is that the adjuster acknowledged she knew as early as May of 2007 that the battery replacement was needed. Still no authority. Fact, that she received a second notice on June 18 and had absolutely no explanation as to why on July 9, 2007, that she had no explanation as to why the battery replacement had not been authorized. The fact was that the petition was filed on August 2, 2007, asking for penalties, and then thereafter the authority was given as of August 15. And the fact is that they paid for the inpatient service, even though the excuse by the adjuster was that she needed to know whether or not it was going to be inpatient or outpatient. There was no evidence whatsoever that that was the issue. The fact is that she had previously, the respondent had previously delayed payment for the battery replacement as per the arbitrator, the original hearing on this. She delayed it from, the respondent I should say, I don't know if it was the same adjuster, from May of 2002 until November of 2002. The fact is that this was the respondent's choice of doctors, Dr. Lubenow, who had been treating the patient all along. Now the reality, the reality is that the adjuster had no good reason not to okay replacement in May or July until she was forced with the penalties petition. The reality is, even though the Act does not require the respondent to give written notice, the reality is that no doctor is going to provide care and treatment until they have the authorization to do the treatment. Counsel, let me ask you this question. What about the argument on the other side, I suppose it could be raised, is that prescribed services that are not yet performed or paid were not considered to have been incurred within the meaning of Section 8A. How do you respond to that argument? I think that you've dealt with this issue in residential development, where in order to get the respondent to do anything, that's a reality. You almost have to force them to do what they're supposed to do, the authorization. I think the residential development dealt with that issue. I see your point, the potential for abuse, but still, if we're looking at this as a matter of statutory interpretation, is there an issue on that matter, whether it was really incurred within the meaning of the Act? Well, how can a petitioner who's waiting for battery replacement incur this without the authorization? That's the reality that we're dealing with, and I think the Commission understood that. And as to the petitioners cannot get the treatment, the doctors won't see them unless they get the authority from the insurance company. You're right. Most doctors won't do it. But the statute, 19K, specifically says, in a case where there has been an unreasonable or vexatious delay of payment or intentional underpayment, there was no delay of payment in this case, nor was there any underpayment in this case. I think if you look at plantation, where you talk about the authority, or that you can get a reward for future treatment, how can we put teeth into getting the respondent to pay for this without... We can go to the legislature and tell the legislature they have a defective statute here that ought to be amended. Well, I think that the Commission took into consideration all of these factors. But just like us, they can't rewrite statutes. I agree with you, but I think with residential development, this allowed them to allow the Commission to award penalties for not authorizing it. This is the reality we're dealing with. How else, as you say, unless you start punishing respondents to get the treatment necessary, if they're not even questioning the need, they just... She just blatantly said, I don't know why I couldn't... You're saying there'd never be any incentive to... I'm sorry, Your Honor? You're saying there'd never be any incentive to authorize the operation if you could sit on it indefinitely with no... Exactly, exactly. You raise my point precisely, because we face this all the time. If we have to go and litigate it, which is often what happens, how are these people supposed to get the treatment necessary? My learned colleague raises a good point. Even though there's a compelling human need to do that, do we read something into the statute that isn't there because of, as you say, the reality of life? Well, as I indicated, I think that you've opened the door with the decision of residential development that does allow award of penalties for not authorizing treatment. And I think that has opened the door to that. Also with McMahon. And if you take it with plantation... Was this ordered? What was actually ordered by the Commission? By the time we got to that point on the hearing, it was ordered for the penalties. No, no, no. Let's go... We have to go back to the beginning, because my colleagues are talking about statute and the concept of incurring, and you're talking about our prior decisions. What was actually... This is a fairly simple case, isn't it? What was ordered by the Commission for your client? The... The order was for them to pay penalties for not authorizing treatment. No, no, no. We got a spinal cord stimulator. Exactly. Let's go back to the very beginning. Okay. You have a client that somehow... Yes. What was the order in regard to the spinal cord stimulator at the very beginning? At the very beginning, the arbitrator made a finding that the petitioner had a spinal cord stimulator and had to have the battery replaced at one point in time. So that was the original arbitrator's award, a finding that the stimulator was necessary due to the injury. And there was never been a dispute as to the necessity of the spinal cord stimulator, if that's your question. But at that point, you were already authorized. It is my question, and in 04, that was the order. Am I correct? That's correct. Okay. Was there any aspect of the order that said there's to be a continuing support of that spinal cord stimulator? I don't think that the arbitrator needs to put that in the order. If you look at the record, which shows that the stimulator would need to be replaced every five years of the battery life, and I think if you look at the whole transcript, which wasn't part of this record, did indicate that she would be needing this every five years. That's why the case was tried and kept open. But my question is a simple question. This was tried, she got an award, and she was entitled to future medical. That's correct. Where in the act does it say that an employer has to authorize the medical? It doesn't specifically state that. No, it doesn't. It says that he has to pay for it. Okay. And in this particular case, there was no refusal to pay at any point in time. Yes, there was. When? It was in May and July of 2007, before the treatment was rendered. No, no, no. They didn't refuse to pay. They refused to authorize. I think it's a distinction without distinction. You want to dance around the question that we have to wrestle with. I understand. The statute says you're penalized for unreasonable or vexatious delay of payment or intentional underpayment. There was no delay in payment in this case. There was a delay in authorization. Isn't that the case? At the time of the hearing under Section 8A in our hearing for penalties, it was incurred and paid. At the time the petition was filed, it was not authorized. And as I said, we're dealing in reality. Ma'am. Yes. This is real easy. Okay. They never delayed in payment, did they? They only delayed in authorization. I don't think there should be a distinction. Can you answer the question yes or no? Did they ever delay in payment? They did not. Well, if you want to look back on the record, there was a delay in getting the payment. It was delayed by several months after it was incurred. So if you really want to look at the record and show that. Well, let's focus on that time frame. The battery was replaced. A bill was sent. Right. And how long was it from that billing to a payment by the respondent? I believe it was from August to December, if I recall correctly. August, okay. Okay. But I can verify that for you. Okay. And was there any action on your part during that period of time to secure payment for that? No, because at that time the petition was still pending before the Workers' Compensation Commission. And the issue had not been brought up. Okay. But I can verify the date that it was actually paid because that was part of the record. You never asked for penalties because they delayed from August to December to pay a bill, did you? Well, not at that time. Not at the time the petition was filed. Did you ever ask for penalties based on a delay from August to December? I never amended my petition. Okay. It was still pending, yes. Okay. Okay. And as I've indicated, I think that if this court can find residential development that they didn't authorize and award payment penalties, I don't see there's a distinction in this case. Well, we have a problem. Some of us have an aversion to amending statutes. We think it's the legislature's job. I understand that. But I guess I don't understand your decision in residential development if that's the case. And that's my comment. Thank you. Counsel, please. May it please the Court. Counsel, George Clawkey on behalf of Hollywood Casino. I believe that the circuit court properly identified this issue as a matter of law. There was no delay in payment in this case. In fact, there was no 8A petition filed. So if counsel is attempting to make this an 8A case, it's not because she never filed an 8A petition. She never filed a petition claiming that there was a delay in payment of any bill. And, in fact, if you look at so I think it's a matter of law and I don't think the statute requires a respondent. What was her petition? Pardon me? What was her petition? Whose position? What was her petition? Her position was that. No, petition, P-E-T-I-T-I-O-N. The petition was merely a penalty petition. That's it. Based on the fact that she felt there was a delay in the authorization of the medical procedure. Not payment. Not payment. Well, not payment, authorization. And, in fact, there was no refusal to authorize in this case either. There was a delay because the adjuster, and as the testimony indicates, the adjuster was trying to get information out of Dr. Lubenow for months. And, finally, on June 15th, a letter was written that said, you know what, we're going to need, we're requesting authorization for this surgery. The December 06 letter just said sometime in the future we're going to need to have this. Well, that's not a request for authorizing surgery. Is that really accurate, though? On June 18th, 2007, didn't Lubenow's staff send a fax to Williams stating the medical necessity for the procedure? And then there was a little bit of a delay. And didn't Williams herself testify she didn't recall any particular reason for the delay? So there's some ostensible delay. The issue is, though, whether or not that falls within the purview of the statute. So I have a threshold question. What is our standard of review on this issue? Is it manifest way or de novo? No, I think it's as a matter of law, it's de novo. Because there is no obligation in the law that states that a respondent has to authorize. Especially in light of the case law that starts with plantation manufacturing. Plantation manufacturing is a case where the commission ordered a respondent to authorize surgery. And this court said, you can't do that. That is not something you can do. Now, later in Bennett auto. The reason for that was that it was like this one, a post-award order. And the court said that the employer would get no chance to contest the reasonableness of the bill. That's correct. And now we've got a fee schedule, right? We do have a fee schedule now. So isn't that reasoning kind of out the window? Well, I guess that's for you to decide. I don't think so. Because all the medical fee schedule does is set a maximum. So if the court is going to say the medical fee schedule establishes all medical treatment, you can't go higher, you can't go lower, then I would appreciate that argument. I don't think that's the intent of Section 8.2 of the Act. It sets the maximum, okay? Well, you will agree, though, won't you, that Section 8A has been interpreted to mean that prescribed medical services are incurred under 8A when they're ordered as opposed to when they're actually performed. I mean, that's what Plantation and, let's see, Bennett Auto Rebuilders and some of these cases say. In other words, it's deemed to be incurred under the Act. I would agree with that. And under Bennett and Holmbright, the court allowed the arbitrator and the commission to require a written authorization, but only because it was a 19B. Well, if that's the only way the medical provider will provide the service, then how does the claimant get the service from the medical provider without some kind of penalties being a possibility? Well, now you're making... Can't the adjuster just cross her arms and say, well, you know, it's not payment, but you can't make us authorize anything. Well, let's look at this case and, as counsel suggested, go to reality. What effort, if any, did the petitioner in this case take to get her medical treatment, whether she wanted it authorized or paid for or whatever? None. She didn't call the adjuster. She went to the doctor. She went to the doctor. She wrote the letter to the claims adjuster, said the surgery was scheduled a couple times and it had to be canceled because it hadn't been authorized. The letter that went to the adjuster, the only letter that... Counsel, before you get into the letter that went to the adjuster, there are two separate questions and there are two separate standards of review. The question of whether they can be penalized for failure to authorize under the statute is a question of law. I agree. Whether they did delay an authorization or did not is a question of fact. You never get to the question of fact until you first answer the question of law. I agree. And I was addressing the question of fact. If you are looking at this as a manifest way, which I don't think is the proper standard, then look to the facts of the case. The facts of the case do not suggest an unreasonable or an underpayment, a no payment, or a delay in payment. In fact, they don't even suggest a refusal to authorize or there may have been a delay in authorization. But as soon as, and I contest that, because as soon as the adjuster had the information she needed to make a determination, she authorized it. And that was August 15th of 07. On the same date, when she got information from Dr. Lubenow, that said, this is going to be an outpatient procedure. And then she extrapolated the cost from before, which I think was actually something that she didn't need to do. She could have asked for another estimate. And, by the way, speaking of estimates, I don't know how the commission, you know, again, as a matter of law, I don't think, I think the circuit court was correct here, but what did they base their petition for penalties on? There was no evidence of the bill. Counsel filed her petition August of 07, didn't have the hearing until March of 09. And in that period of time, there's no evidence of what the bill is. She has not met her burden of proof. Even if you find that there was, you know, that the law somehow requires authorization and that there was a delay and everything else, there is still no basis here to make an award, a dollar award, a penalty. So the Respondent would respectfully request that this Court reverse the commission's decision and uphold the circuit court. So how do you read residential carpentry? Your opponent is citing it for the proposition that in that case, the commission was found to have properly awarded penalties due to the Respondent's unreasonable withholding of authorization for payment of medical treatment. Does that case provide supporting precedent for her position? No, it does not. Why not? Because, number one, that was a 19B. And we don't have that situation here. We have a final hearing back in 2004 that awarded permanency. And, by the way, the decision never addressed future medical. It never said she's entitled to battery replacement on the spinal cord stimulus. It never said that. I'm wondering if that's the law, though, isn't it? I'm sorry? You're responsible, once they try that case, you're responsible for all future medical. Under Section 8A. If she's got a spinal cord stimulator and it needs a battery, you've got to pay for it. Absolutely. Absolutely. But there was a question whether that was awarded. Counsel said it was. Yeah. There was no award for that. But I agree, under 8A, we have that obligation. And, in fact, between the date of the decision in 2004 and the date of the surgery or surgery in 07, but for this small period of time between June of 07 and August 15 of 07, all the bills are paid. There's no allegation that there was any delay or malintent or anything like that during that entire period of time. This is not the case to award $40,000 in penalties against an employer. Just, you know, the adjuster did what she was supposed to do. Let's go to the facts here. Is the spinal cord stimulator, was it functioning during that period of time of delay in the request for authorization? We don't know that. We know that in December of 06, Dr. Lubenow issued a letter that said eventually they're going to need to replace the battery. Okay. Sometime in the spring was his letter. That's fine. The adjuster testified that she didn't think that was an imminent request for surgery. So there was no imminent request for surgery. The only imminent request for surgery was June 15, which letter was received on or June 18, which letter was received on June 20 by the adjuster. Now it said we need to do this. Now, when counsel brings up the May visit to, by petitioner to Dr. Lubenow, which was the regularly scheduled visit that she had, she testified at trial that her batteries hadn't been working for six to eight weeks before that. Why didn't she go to Dr. Lubenow and say, hey, I haven't had working batteries for six to eight weeks? So we don't know if that's true or if that's not true. I assume that at some point during that period of time the batteries started to malfunction or not work or whatever that required this. Didn't Lubenow schedule it for surgery in May because they weren't working and canceled that surgery because it wasn't authorized? Well, that's an interesting point. I don't know why it was canceled. Counsel suggests that it was canceled twice. Some of that testimony was objected to, and my objection was sustained. So I'm not sure that we had evidence, direct evidence, other than the petitioner's or counsel's own statement that said this is rescheduled twice. And the reason that it was rescheduled twice, I don't know. In May, the spinal cord stimulator quit working. Lubenow scheduled the surgery.  He didn't get authorization, and the surgery was canceled. Do you agree that all those facts are incorrect? I believe that is true. But what was left out was the fact that the adjuster, upon receiving that, contacted the doctor, in fact, tried to contact the doctor May 8th, May 9th, May 10th, and left messages, left messages on June 7th, left messages on June 8th. This adjuster was trying to communicate with the doctor to get the necessary information she needed. She wanted to know what the medical necessity was of replacing the batteries in the spinal cord stimulator. And where is it going to be done so she can determine the cost, which leads us right back to the plantation manufacturing case that said you can't order authorization after a PPD award has been made. You can't require them to provide written authorization. So I think it all comes back to that. I think this part, the only thing that we can do here, and first of all, I think penalties are not appropriate anyway, even if you take a manifest weight look at this thing, if you read the record carefully. But it's a matter of law, because there was never any requirement to authorize the surgery. And the only time that it was requested was June 15th, not May. A request for them to authorize the surgery. So a respondent would respectfully request that the commission decision be reversed. Can I ask you a final question? Yes. What is the remedy, then, to the question that opposing counsel poses? If there is no incentive legally for the company to ever pay for the surgery, even where it's documented it's necessary, what relief does the claimant have in those circumstances? Well...  Yeah, well, many doctors will proceed with the surgical procedure and submit a bill and have a receivable like the rest of the commercial world. But the statute would have to be amended, wouldn't it? I believe the statute would have to be amended. Okay. Absolutely. And I think it could be. In fact, it was just amended, and they still do. Thank you. May I have the rebuttal, please? Just briefly, first of all, the bills were paid within 60 days, and so there's no complaint as far as the paid. It was in October of 2007, for clarification. Something that counsel said that the adjuster said, I think he said that she had all the information needed, and that is subjective, as one of you have indicated, that to cross her arms and say I'm not going to pay, there's no incentive. And also, there is no indication that they need to write in the arbitration award that the future treatment is needed. You will not see that too often in the arbitrator's award. However, you can assume from the facts that it was going to be necessary. Thank you. Thank you, counsel. The court will take the matter under advisement for disposition.